# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                                        Case No. 06-CR-108

**LEON HOLT**
        Defendant.

## SENTENCING MEMORANDUM

Defendant Leon Holt pleaded guilty to possessing firearms as a felon (count one), contrary to 18 U.S.C. § 922(g), and possessing 50 grams or more of crack cocaine with intent to distribute (count two), contrary to 21 U.S.C. § 841(a)(1) & (b)(1)(A). The probation office prepared a pre-sentence report ("PSR"), which set defendant's offense level at 22 on count one (base level 20, U.S.S.G. § 2K2.1(a)(4)(A), plus 2 for possession of three guns, § 2K2.1(b)(1)(A)) and 34 on count two (base level 32, U.S.S.G. § 2D1.1(c)(4), plus 2 based on firearm possession, § 2D1.1(b)(1)). The PSR grouped the two counts under U.S.S.G. § 3D1.2(c), for an adjusted offense level of 34, then subtracted 3 for acceptance of responsibility, § 3E1.1, creating a final level of 31.[1] Coupled with a criminal history category of V, the PSR

---

[1] The counts were properly grouped because defendant's firearm possession resulted in an enhancement under U.S.S.G. § 2D1.1(b)(1) on count two. See U.S.S.G. § 3D1.2(c) (requiring grouping "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts"). I note that the PSR did not recommend an enhancement on count one under U.S.S.G. § 2K2.1(b)(6) based on possession of firearms "in connection with another felony offense." This was so because the government conceded that it could not prove that the firearms facilitated or had the potential of facilitating defendant's drug trafficking. U.S.S.G. § 2K2.1 cmt. n.14(A). Because the enhancement under § 2D1.1(b)(1) applies "if the weapon was present, unless it was clearly improbable that the weapon was connected with the offense," U.S.S.G. § 2D1.1 cmt. n.3, thus imposing a lesser burden on the government than under § 2K2.1(b)(6), there was nothing inconsistent in imposing the firearm enhancement on the drug

recommended an imprisonment range of 168-210 months under the sentencing guidelines.

Neither side objected to the PSR, but defendant requested a sentence of 120 months, to run concurrent with a state sentence after revocation he was then serving, while the government advocated a sentence at the low end of the range, with no objection to running the sentence concurrently. In this memorandum, I set forth the reasons for the sentence imposed.

## I. SENTENCING FACTORS

In imposing sentence, I must consider the factors set forth in 18 U.S.C. § 3553(a):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Upon considering these factors, the statute directs me to impose a sentence that is sufficient but not greater than necessary to comply with the purposes of

---

count but not imposing an enhancement for drug trafficking on the firearm count.

sentencing set forth in § 3553(a)(2) – just punishment, deterrence, protection of the public and rehabilitation of the defendant.

## II.  DISCUSSION

**A.     Nature of Offense**

Police went to defendant's house to conduct a so-called knock and talk investigation. Defendant answered the door, struck or pushed one of the officers and tried to run, but was apprehended. Officers heard a scream from inside the house and saw a girl, later identified as defendant's daughter, run from the residence. Officers conducted a sweep of the house and located a large glass bowl containing crack and powder cocaine, as well as three firearms: a 12 gauge shotgun, a loaded .45 caliber handgun and a loaded assault rifle. The crack weighed a total of 88.81 grams, and the powder .75 grams.

In a post-arrest statement, defendant admitted that he had been selling crack for the past year, making about $11,000 per month. He admitted striking one of the officers because he thought someone was trying to steal his cocaine. He stated that the guns were not his, and that he was holding them for a friend.[2] However, he admitted that as a felon he should not have guns.

The offense was quite serious: defendant attempted to escape the officers and possessed several loaded firearms and a significant amount of crack cocaine around his young daughter. On the mitigating side, however, he did confess his wrongdoing to the officers after his arrest, and he entered a guilty plea and accepted responsibility for his actions in court.

---

[2]Defendant stated that his friend dropped the guns off shortly before the police arrived, suggesting that he was set up. The government was unable to confirm this but conceded that it was possible.

3

## B. Character of Defendant

Defendant was thirty-five years old and had a fairly significant record, including juvenile adjudications for battery and operating a motor vehicle without owner's consent, and adult convictions for battery, possession of cocaine, robbery, obstructing an officer and drunk driving. The facts of the robbery, as related in the PSR, were alarming, as defendant struck another man with a weapon while demanding money. However, at sentencing, defendant stated that the offense arose out of an argument over a dice game. Apparently, the state court judge who presided over that case saw some mitigation, as he elected to place defendant on probation for eight years, with a ten year stayed prison term. According to the state probation file, defendant did quite well on supervision for seven years, but then started drinking and using drugs and committed the instant offense, leading to his revocation and the implementation of the ten year stayed prison sentence.

There were other negatives in defendant's background. He had seven children with five different women and owed nearly $80,000 in back child support. He also had little verifiable employment history. He denied substance abuse problems to the PSR writer, but his state probation file told another story, with failed tests for cocaine, alcohol and marijuana.

On the positive side, defendant did remain crime free for about seven years before his arrest on this case. During that time, he also got his GED and worked on obtaining his barber degree. His current girlfriend made positive statements, and numerous family members appeared in support at sentencing. Despite being behind in his child support, it did appear that defendant was involved in his children's lives, and he had custody of one of his daughters at the time of his arrest on this case.

4

**C. Purposes of Sentencing**

There was a need for a substantial period of confinement in this case, given the seriousness of the offense. Given defendant's record, I also believed that substantial confinement was needed to protect the public and deter defendant from re-offending. Finally, it appeared that defendant would benefit from substance abuse treatment, although he did not seem to recognize that.

**D. Consideration of Guidelines' Recommendation**

The guidelines called for a term of 168-210 months. I concluded that this range was slightly greater than necessary to satisfy the purposes of sentencing. First, although defendant had a fairly significant record, it included just one prior felony, and defendant had never been to prison before. "Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend." United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005). Second, there was no evidence in the record suggesting that defendant owned the firearms located in his home or intended to use them in any way. The most likely explanation for their presence was the one defendant provided – a friend dropped them off and asked defendant to hold them.[3] Nevertheless, defendant was subject to a 2 level enhancement under U.S.S.G. § 2D1.1(b)(1). Absent that enhancement, the range was 140-

---

[3] It may be that the friend set defendant up, dropping off the guns, then calling the police to initiate an investigation. However, I made no finding on this issue. In any event, as defendant admitted in his post-arrest statement, he knew that he could not possess firearms based on his status as a convicted felon.

175 months. Therefore, I concluded that a sentence a bit below the range would be sufficient.[4]

However, defendant's suggested sentence was insufficient. Defendant faced a ten year mandatory minimum on count two alone; thus, imposing a total sentence of 120 months would have failed to account in any way for his unlawful firearm possession. Under all of the circumstances, I concluded that a total sentence of 150 months was sufficient but not greater than necessary. Because this sentence varied from the guideline range by only about 1 level and was supported by the particular facts of the case, it did not create unwarranted disparity.

Consistent with the positions of the parties, I elected to run the instant sentence concurrent with the state sentence after revocation defendant was serving. I recognized that the guidelines recommend a consecutive sentence where, as here, the defendant was on probation at the time he committed the instant federal offense. U.S.S.G. § 5G1.3 cmt. n.3(C). However, defendant did quite well on state probation and was just about to discharge at the time of his arrest on this case. Further, defendant will be parole eligible on the state case in January 2008, with a mandatory release date of March 10, 2012. Thus, even if he served out the state sentence without discretionary parole, a 150 month federal sentence provided for a

---

[4] Although defendant did not raise the issue, I recognized that the range in this case was elevated because the substance involved was crack rather than powder cocaine. However, the drug weight attributed to defendant was almost certainly low, given his admission that he had been dealing for about a year. Further, the other aggravating factors discussed above weighed against a sentence significantly below the guidelines. Thus, to the extent that I retain the discretion to consider the crack-powder disparity, see United States v. Jointer, 457 F.3d 682, 687-88 (7th Cir. 2006) (noting that the district court may consider the Sentencing Commission's analysis of the disparity insofar as it relates to an individual defendant's case); cf. United States v. Pickett, No. 05-3179, 2007 U.S. App. LEXIS 3272, at *25-26 (D.C. Cir. Feb. 13, 2007) (holding that district courts may consider the disparity incorporated into the guidelines); United States v. Gunter, 462 F.3d 237, 249 (3d Cir. 2006) (holding "that district courts may consider the crack/powder cocaine differential in the Guidelines as a factor, but not a mandate, in the post-Booker sentencing process"), I declined to do so on the facts of this case.

6

substantial additional sanction and a total punishment sufficient to satisfy the purposes of sentencing.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 120 months on count one and 150 months on count two, to run concurrently with each other and with the sentence in defendant's state case, for a total of 150 months. I recommended that he participate in any drug abuse treatment programs available while imprisoned. Upon release, I ordered him to serve a five year supervised release term, with drug testing and treatment and other conditions that appear in the judgment.

Dated at Milwaukee, Wisconsin, this 21st day of February, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge